## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMILA DAVALOS; MARIANA DAVALOS; JAMIE JEANELLE MIDDLETON d/b/a JAMIE EASON; JOANNA KRUPA; MARTA KRUPA; and PAOLA CAÑAS, | |
| *Plaintiffs*, | Civil Action No.: |
| v. | |
| BAY WATCH, INC. d/b/a CLUB ALEX'S ADULT ENTERTAINMENT and ALEXANDER ALEXOPOULOS, | |
| *Defendants*. | |

Plaintiffs CAMILA DAVALOS; MARIANA DAVALOS; JAMIE JEANELLE MIDDLETON d/b/a JAMIE EASON; JOANNA KRUPA; MARTA KRUPA; and PAOLA CAÑAS (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants BAY WATCH, INC. d/b/a CLUB ALEX'S ADULT ENTERTAINMENT and ALEXANDER ALEXOPOULOS (collectively "Defendants") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Club Alex's located in Stoughton, Massachusetts ("Club Alex's" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading

- 1 -

representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Massachusetts's Unfair Trade Practices Act (M.G.L.A. 93A § 11); d) violation of Massachusetts's right of publicity statute (M.G.L.A. 214 § 3A;  e) defamation; and f) various common law torts, including conversion.

3.    In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.    As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.    According to publicly available records, defendant Bay Watch, Inc. is a corporation formed under the laws of the state of Massachusetts, with its principal place of business located at 584 Washington Street, Stoughton, Massachusetts 02072. Bay Watch, Inc. operates Club Alex's, which is located at 584 Washington Street, Stoughton, Massachusetts 02072.

7.    Venue is proper in the United States District Court for the District of Massachusetts because Stoughton, Massachusetts is Defendants' principal place of business.

8.    Primarily and substantially the alleged causes of action arose and accrued in

Stoughton, Massachusetts and the center of gravity for primarily and substantially all relevant events alleged in this complaint is predominately located in Stoughton, Massachusetts.

## PARTIES

*Plaintiffs*

9.    Plaintiff Camila Davalos ("Davalos") is a well-known professional model, and a resident of Miami-Dade County, Florida.

10.    Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Los Angeles County, California.

11.    Plaintiff Jamie Jeanelle Middleton d/b/a Jamie Eason ("Middleton") is a well-known professional model, and a resident of Harris County, Texas.

12.    Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Los Angeles County, California.

13.    Plaintiff Marta Krupa ("Krupa") is a well-known professional model, and a resident of Northampton County, Pennsylvania.

14.    Plaintiff Paola Cañas ("Cañas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

*Defendants*

15.    According to publicly available records, defendant Bay Watch, Inc. is formed under the laws of the state of Massachusetts. During times relevant to this action, Bay Watch, Inc. operated Club Alex's in Stoughton, Massachusetts.

16.    According to publicly available records, and upon information and belief, Alexander Alexopoulos, in his capacity as principal, owner and/or CEO of Bay Watch, Inc. maintained operational control over Club Alex's, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

17.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

18.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

19.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Club Alex's.

20.     In the case of every Plaintiff, such appearance was false.

21.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

22.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

23.     By using the Plaintiffs' image and likeness, Defendant did not use their own advertising idea, and instead used the Plaintiffs' (or their licensees') advertising ideas to promote

their club to the public.

***Plaintiffs' Backgrounds and Careers***

24.     Camila Davalos is a model whom by the time was 18, her career was already established in Colombia as one of the most famous and successful models there. At age 22, Davalos became the face of the world famous *Besame* lingerie line and was in high demand in the United States. Since then Davalos has earned a reputation as a Latin Super Model, appearing in hundreds of magazine editorials, catalogues, runway shows and covers. Some of her clients include *Maxim Magazine, Imagen Magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans, and Satori*.

25.     That we know of, Davalos is depicted in the photo in Exhibit "A" to promote Club Alex's on its Facebook page. Davalos appears as the model to the right in the black bathing suit. This Image was intentionally altered to make it appear that Davalos was either an entertainer working at Club Alex's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

26.     Davalos has never been employed at Club Alex's, has never been hired to endorse Club Alex's, has never been otherwise associated or affiliated with Club Alex's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

27.     Mariana Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is

constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her 563,884 Instagram, Twitter, and Facebook followers.

28.     That we know of, Davalos is depicted in the photo in Exhibit "A" to promote Club Alex's on its Facebook page. Davalos appears as the model to the left in the white bathing suit. This Image was intentionally altered to make it appear that Davalos was either an entertainer working at Club Alex's that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

29.     Davalos has never been employed at Club Alex's, has never been hired to endorse Club Alex's, has never been otherwise associated or affiliated with Club Alex's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.     Jamie Jeanelle Middleton d/b/a Jamie Eason is an American model, Fitness model, businesswoman, nutritionist, and spokeswoman. Middleton is a former NFL cheerleader and winner of The World's Fittest Model Competition. She graduated from Texas A&M University with a degree in speech communication/organization. Middleton has been the featured subject and cover girl on many fitness and women's magazines. She currently a full-time spokesperson for Bodybuilding.com and has her own line of swimwear as well as a supplement line with Labrada nutrition. Middleton is a devout Christian and is married to Michael Middleton who is a worship leader in their church. Middleton has more than 2 million fans between Facebook, Instagram and Twitter.

31.     That we know of, Middleton is depicted in the photo in Exhibit "B" to promote

Club Alex's on its Facebook page. This Image was intentionally altered to make it appear that Middleton was either an entertainer working at Club Alex's that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

32.    Middleton has never been employed at Club Alex's, has never been hired to endorse Club Alex's, has never been otherwise associated or affiliated with Club Alex's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.    Joanna Krupa is, and at all times relevant to this action was, a Polish American model, actress, and dancer. She was named the "Sexiest Swimsuit Model in the World" and has appeared on the cover of magazines such as *Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, Maxim*, and twice for *Playboy*. Krupa has also graced the covers of South African *GQ*, and the Polish editions of *Cosmopolitan, InStyle, Glamour*, and *Grazia*. Krupa was voted "Model of the Year" in Maxim's 2004-2005 German edition and was ranked #55 in Maxim's "Hot 100" 2011 edition and was voted "Model of the Year" in Maxim's 2004-2005 German edition. She has appeared on the cover of Playboy magazine twice, modeled for PETA, and founded an animal rescue group, Angels For Animal Rescue, with her friend Gabi Gutierrez. In addition, Krupa has appeared in "The Underground Comedy Movie" (1999) (2010 re-issue), "Planet of the Apes" (2001), "The Man Show" (2002–2003), the action film "Max Havoc: Curse of the Dragon," (2004), "Las Vegas" episode "Degas Away with It" (2004), "CSI: Crime Scene Investigation" episode "Kiss-Kiss, Bye-Bye" (2006), "The Dog Problem" (2006), "Scary Movie 4" (2006), "Ripple Effect" (2007), "Skinner Box" (2007),the television show "Superstars" (June 2009), and in Season 9 of "Dancing with the Stars." (2009), "Szymon Majewski Show" (Polish TV talk show) (2010), Krupa was a cast member for the reality TV show "The Real Housewives

of Miami" (2012–2013), "Ridiculousness" (2014), and has been the host and head judge in Poland's "Next Top Model" since 2010.

34.     That we know of, Krupa is depicted in the photo in Exhibit "C" to promote Club Alex's on its Facebook page. Krupa appears as the model to the right in the black bikini. This Image was intentionally altered to make it appear that Krupa was either an entertainer working at Club Alex's that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

35.     Krupa has never been employed at Club Alex's, has never been hired to endorse Club Alex's, has never been otherwise associated or affiliated with Club Alex's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.     Marta Krupa was a contestant on "Dancing with the Stars" in Poland and was a TV host on FHM South Africa Calendar. She has appeared in cover magazines worldwide such as 944, FHM, LA Direct, Naluda, and Bay Harbor San Fran. She does acting and singing now, with her single on iTunes called "Limbo". She has appeared on 13 episodes of The Real Housewives of Miami and she just finished a movie that is soon to be released, called "You Can't Have It" (Indy film, supporting role).

37.     That we know of, Krupa is depicted in the photo in Exhibit "C" to promote Club Alex's on its Facebook page. Krupa appears as the model to the left in the black bikini. This Image was intentionally altered to make it appear that Krupa was either an entertainer working at Club Alex's that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

38.     Krupa has never been employed at Club Alex's, has never been hired to endorse Club Alex's, has never been otherwise associated or affiliated with Club Alex's, has received no

remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Paola Cañas is a Colombian born model now residing and working in the United States. Cañas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Cañas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Golf Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Cañas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Cañas has over 545 thousand Instagram followers, over 10.5 thousand followers on Twitter, and over nine thousand Facebook likes.

40.     That we know of, Cañas is depicted in the photo in Exhibit "D" to promote Club Alex's on its Facebook page. This Image was intentionally altered to make it appear that Cañas was either an entertainer working at Club Alex's that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

41.     Cañas has never been employed at Club Alex's, has never been hired to endorse Club Alex's, has never been otherwise associated or affiliated with Club Alex's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

42.     Upon information and belief, Defendants operated, during the relevant time period, Club Alex's, where they engaged in the business of selling alcohol and food in a sexually charged atmosphere.

43.     Upon information and belief, and in furtherance of its promotion their promotion of Club Alex's, Defendants own, operate and control Club Alex's' social media accounts, including its Facebook, Twitter, and Instagram accounts.

44.     Defendants used Club Alex's' Facebook, Twitter, and Instagram accounts to promote Club Alex's, and to attract patrons thereto.

45.     Defendants did this for their own commercial and financial benefit.

46.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as an entertainer working at Club Alex's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

47.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Club Alex's to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

48.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Club Alex's and at no point have any of the Plaintiffs ever endorsed Club Alex's, or otherwise been affiliated or associated with Club Alex's.

49.     All of Defendants' activities, including their misappropriation of Plaintiffs'

Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

50.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

**Standard Business Practices in the Modeling Industry**

51.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

52.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

**Defendants' Misappropriation of Plaintiffs' Images**

53.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Club Alex's by and through various marketing and promotional mediums including, without limitation, Club Alex's' website, Twitter, Facebook, and Instagram.

54.     Defendants showcased Plaintiffs' Images on Club Alex's' social media pages to create the false impression that Plaintiffs worked at Club Alex's, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

55.     Defendants did so to attract clientele to Club Alex's, promote Club Alex's, and thereby generate revenue for Defendants.

56.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Club Alex's.

57.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

58.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

59.     This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendants' use of Plaintiffs' Images is that they are entertainers, endorse a night club, or are otherwise associated or affiliated with a night club.

60.     At no point were any of the Plaintiffs ever affiliated with Club Alex's, or Defendants.

61.     Each of Plaintiffs' Images was used without her consent.

62.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

63.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

64.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Club Alex's website, Twitter, Facebook, or Instagram accounts.

65.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her

Images.

66.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

67.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

68.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

69.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Club Alex's or agreed to appear in Club Alex's advertisements.

70.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

71.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Club Alex's.

72.     Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

73.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

74.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

75.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiff's employment at and/or endorsement of the Club, and the goods and services provided by the Club.

76.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)**

77.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

78.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

79.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Club Alex's, or worked at, sponsored, or approved of Club Alex's' goods, services or commercial activities.

80.     This was done to promote and attract clientele to Club Alex's, and thereby generate revenue for the Defendants.

81.     Thus, this was done in furtherance of Defendants' commercial benefit.

82.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Club Alex's, nor worked at, sponsored, or approved of Club Alex's' goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Club Alex's.

- 14 -

83.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

84.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiff's employment at and/or endorsement of the Club, and the goods and services provided by the Club.

85.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
### (Common Law Right of Privacy)

86.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

87.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Massachusetts law.

88.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

89.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Club Alex's' website or related social media accounts as part of Defendants' advertising campaign.

90.     At all relevant times, Club Alex's' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

91.     Club Alex's' website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

92.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

93.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

94.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

95.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Club Alex's.

96.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

97.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

98.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

99.     Defendants' actions are an unreasonable and/or serious interference with each Plaintiff's right of privacy.

100.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs'

Images.

## FOURTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 1B*:  Right of Privacy)

101.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

102.    Defendants have violated each Plaintiff's statutory right to privacy under *M.G.L. c. 214, § 1B*.

103.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

104.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Club Alex's' website or related social media accounts as part of Defendants' advertising campaign.

105.    At all relevant times, Club Alex's' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

106.    Club Alex's' website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

107.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

108.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the

filing of this complaint.

109.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

110.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Club Alex's.

111.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

112.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

113.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

114.     Defendants' actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

115.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

### FIFTH CAUSE OF ACTION
**(Violation of *M.G.L. c. 214 § 3A*:  Unauthorized Use of Individual's Name, Portrait, or Picture)**

116.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

117.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

118.     Within Massachusetts, Defendants used each Plaintiff's image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their night club.

119.    No Plaintiff ever gave Defendants' written consent, authorization, or otherwise granted permission to Defendants to use her image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

120.    Defendants were at all times aware that no Plaintiff ever authorized Defendants to use her image in advertising.

121.    As such, Defendants' misappropriation and publication of each Plaintiff's image in advertising was knowing and willful.

122.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

123.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

124.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

125.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

126.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

127.    In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute and given Defendants' willful and knowing misappropriation and publication of each Plaintiff's image, Plaintiffs are entitled to treble damages.

## SIXTH CAUSE OF ACTION
### (Common Law Right of Publicity)

128.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

129.   As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

130.   Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

131.   As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Blush advertising.

132.   Defendants did so without any Plaintiff's consent, written or otherwise.

133.   Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

134.   Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

135.   Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

136.   At no point did Defendants ever compensate Plaintiffs for its use of their Images.

137.   No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

138.    In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
**(Violation of *M.G.L. c. 93A § 11*: Unfair Trade Practices)**

139.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

140.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under *M.G.L. c. 93A.*

141.    As set forth herein, Defendants embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs were either entertainers at the Club, endorsed the Club, or were otherwise associated or affiliated with the Club.

142.    Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

143.    Defendant's actions occurred primarily and substantially within Massachusetts.

144.    Defendants were at all times aware that no Plaintiff was an entertainer at, had contracted to endorse or promote, or was otherwise associated or affiliated with the Club, but nevertheless published each Plaintiff's image.

145.    This was done for Defendants' commercial benefit, and to the detriment of Plaintiffs.

146.    Plaintiffs suffered actual money damages by reason of Defendants' unfair and deceptive advertisements by, *inter alia*, being deprived those monies Defendants should have paid them for their appearance in Defendants' advertisements.

147.    In addition to actual damages, and in light of Defendants' knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorney's fees and costs, , as provided for under this statute.

148.    In addition to actual damages, to Defendants' unfair and deceptive acts may have the effect of causing such loss to each Plaintiff's business that Plaintiffs are entitled to injunctive relief.

## EIGHTH CAUSE OF ACTION
### (Defamation)

149.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

150.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

151.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

152.    None of these representations were true.

153.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were entertainers working at the Club or endorsed the Club.

154.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

155.    In the alternative, Defendants published the Images of Plaintiffs with actual

malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

156.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

157.    Defendants' publication of Plaintiffs' Images constitutes defamation under Massachusetts law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as an entertainer and/or endorsing a night club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

158.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Massachusetts law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

159.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional entertainer and/or promoting a night club, an inference which Defendants' publication of the Images support.

160.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Massachusetts law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to her.

161.     Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### NINTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

162.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

163.     Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

164.     Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

165.     Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

166.     Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

167.     Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and

advertising purposes were not unauthorized, non-consensual, or false and deceptive.

168.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Massachusetts law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

169.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

170.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**(Conversion)**

171.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

172.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

173.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

174.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

175.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

176.   As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

177.   Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at the Clubs or endorsed the Clubs.

178.   Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

179.   Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

180.   Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

181.   Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

182.   As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### (Quantum Meruit)

183.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

184.   Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

185.   Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

186.   Although Defendants have availed themselves of the benefit of being associated

with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

187.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive and/or treble damages, in an amount to be determined at trial, based on Defendants' knowing and willful misappropriation of Plaintiffs' publicity and property rights and deceptive trade practices;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Massachusetts law, including but not limited to the statutory right to privacy; statutory unauthorized use of name, portrait or picture; and the *M.G.L. c. 93 A* unfair and deceptive trade practices act; and,

(e) For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

Dated: June 29, 2021

- 27 -

PLAINTIFFS,

By their Attorneys,

/s/Paul Sullivan
Paul V. Sullivan, BBO# 634466
Sullivan Law Offices, PC
33 Broad Street, Suite 302
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@psullivanlaw.com

*and*

/s/John V. Golaszewski
John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel:  (646) 872-3178
Fax:: (855).220.9626
john@talentrights.law

*Pro Hac Vice Application Forthcoming