United States District Court
District of Massachusetts

| | |
|---|---|
| Camila DAVALOS et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 21-11075-NMG |
| BAYWAYCH INC. d/b/a Club Alex's | ) |
| Adult Entertainment, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from allegations that defendant, Baywatch Inc. d/b/a Club Alex's Adult Entertainment ("Club Alex" or "defendant"), improperly used images of the plaintiffs, purportedly well-known professional models, to promote its nightclub, Club Alex. Pending before the Court are cross motions for summary judgment. For the reasons that follow, defendant's motion will be **ALLOWED**, and plaintiffs' motion will be **DENIED**.

I. **Background**

Plaintiffs Camila Davalos, Mariana Davalos, Jamie Middleton, Joanna Krupa, Marta Krupa and Paola Cañas (collectively, "plaintiffs") allege that their images (in the form of photographs) were misappropriated and intentionally altered, without their consent, in a series of Facebook posts

- 1 -

made by defendant to make it appear that they worked at, endorsed or were otherwise associated with Club Alex.

The four images in dispute (in which the plaintiffs appear in scanty attire) were posted on Club Alex's Facebook page between August, 2013, and November, 2015.  Three of the four posts included a photograph of one or more of the plaintiffs with no text written in the "caption box" accompanying the images.  The fourth image includes a picture of plaintiff Paola Cañas with text embedded within the image.  In that post, the caption box does not include any written text.

Plaintiffs filed suit in this Court in 2021, asserting 12 causes of action: 1) false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), 2) false association, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), 3) common law right of privacy, 4) right of privacy based upon M.G.L. c. 214 § 1B, 5) unauthorized use of a person's name, portrait or picture in violation of M.G.L. c. 214 § 3A, 6) common law right of publicity, 7) unfair trade practices, in violation of M.G.L. c. 93A § 11, 8) defamation, 9) negligence, 10) conversion, 11) unjust enrichment and 12) quantum meriut.

Because plaintiffs brought their state-law claims (Counts 3-12) outside the applicable statute of limitations under M.G.L. c. 260, § 2A, plaintiffs argued for the applicability of the "discovery rule" which prevents a statute of limitations from

- 2 -

running until a plaintiff knew or reasonably should have known of their alleged injury.  The Court initially granted summary judgment, finding the discovery rule inapplicable.  On reconsideration, and after recognizing that the applicability of the discovery rule to social media posts presented a novel question of Massachusetts law, the Court certified the following question to the Massachusetts Supreme Judicial Court ("SJC"):

> Under what circumstances, if any, is material publicly posted to social media platforms "inherently unknowable" for purposes of applying the discovery rule in the context of defamation, right to publicity, right to privacy and related tort claims?

The SJC answered that certified question as follows:

> Claims for defamation, violation of the right to privacy, violation of the right of publicity, and related claims that arise from material posted to social media platforms accrue when a plaintiff knows, or reasonably should know, he or she has been harmed by the defendant's publication of that material. Given how "vast" the social media universe is on the [i]nternet, and how access to, and the ability to search for, social media posts may vary from platform to platform and even from post to post, that determination requires consideration of the totality of the circumstances regarding the social media posting, including the extent of its distribution, and the accessibility and searchability of the posting. The application of the discovery rule is therefore a highly fact-specific inquiry, and the determination of whether plaintiffs knew or should have known that they were harmed by a defendant's post on social media must often be left to the finder of fact. If, however, the material posted to social media is widely distributed, and readily accessible and searchable, a judge may determine as a matter of law that the discovery rule cannot be applied.

Davalos v. Bay Watch, Inc., No. SJC-13534, 2024 WL 4031129, at
*1 (Mass. Sept. 4, 2024).[1]  The parties likewise contest whether
plaintiffs' Lanham Act claims (Counts 1-2) were timely brought.
Because the Lanham Act contains no statute of limitations, the
parties dispute whether the doctrine of laches applies.  In its
prior order, the Court declined to address that issue until the
parties had an opportunity to brief it more thoroughly.

Now, based on the SJC's response to the certified question,
it remains for this Court to reassess the applicability of the
discovery rule under M. G. L. c. 260, § 2A and the question of
whether it permits plaintiffs to bring these otherwise untimely
claims under Counts 3 through 12.  In addition, based on the
parties' further briefing of the timeliness of the Lanham Act
claims, this Court will also determine whether the doctrine of
laches time-bars plaintiffs' claims under Counts 1 and 2.

## II.  **Motions for Summary Judgment**

### A. Legal Standard

Under Fed. R. Civ. P. 56, summary judgment is warranted
where "there is no genuine issue as to any material fact" and
thus "the moving party is entitled to a judgment as a matter of
law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby,

---

[1] As part of its decision addressing the certified question, the SJC clarified
that the "inherently unknowable" standard that this Court articulated in its
certified question is, under contemporary law, more accurately stated as a
"knows or reasonably should know" standard.  Davalos, 2024 WL 4031129, at *4.

Inc., 477 U.S. 242, 249 (1986).  A fact is "material" if it "is one that affects the outcome of the suit," id. at 48; see Patco Constr. Co. v. People's United Bank, 683 F.3d 197, 207 (1st Cir. 2012), and a "genuine issue" exists as to that material fact if "there is sufficient evidence supporting the claimed factual dispute," Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).  For a claim to survive summary judgment, the plaintiff must provide a sufficient evidentiary basis to establish each essential element of the claims at issue. Katz v. Belveron Real Est. Partners, LLC, 28 F.4th 300, 307 (1st Cir. 2022).  The Court views the record in the light most favorable to the non-moving party and makes all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

### B. Statute of Limitations

#### 1. State Law Claims

As the Court recognized in its prior order, plaintiffs allege nine state statutory and common law claims under Counts 3 through 12.  Defendant argues, and plaintiffs do not dispute, that these claims are all governed by the limitations period set forth in M.G.L. c. 260, § 2A which provides that tort claims "to recover for personal injuries" must be brought "within three years . . . after the cause of action accrues." M.G.L. c. 260, § 2A.  In their prior motion for reconsideration, plaintiffs did not dispute this Court's initial conclusion that the accrual

date of their claim cannot itself be construed to render their claim timely.  Accordingly, the only matter in dispute regarding the statute of limitations is whether the discovery rule applies to preserve Counts 3 through 12 of plaintiffs' complaint.

As the answer to this Court's certified question to the SJC explained, the discovery rule is a judicially crafted exception to the general rule that a statute of limitations begins to run at the time of the plaintiff's injury.  See Davalos, 2024 WL 4031129, at *3 (citing (Passatempo v. McMenimen, 960 N.E.2d 275, 288 (Mass. 2012)).  Under the discovery rule, a statute of limitations is tolled and will not begin to run until

> [T]he plaintiff discovers or with reasonable diligence
> should have discovered that (1) he has suffered harm; (2)
> his harm was caused by the conduct of another; and (3) the
> defendant is the person who caused that harm.

Id. (citing Harrington v. Costello, 7 N.E.3d 449, 456 (Mass. 2014).  Massachusetts law recognizes this rule to avoid "unfairness" that may arise where a statute of limitations has run even before a plaintiff knows of his injury. Id. (citing Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 740 (Mass. 1990)).

Because the discovery rule considers not only what the plaintiff has in fact discovered but also what he should have discovered, it will not apply if the plaintiff reasonably "should have known" of the alleged harm. Id. at *4 (citing Williams v. Ely, 668 N.E.2d 799, 804 (Mass. 1996); Albrecht v.

Clifford, 767 N.E.2d 42, 49 (Mass. 2002)).  Generally, what the plaintiff knew or should have known is a question of fact to be resolved by a jury. Id. at *5 (citing Koe v. Mercer, 450 Mass. 97, 101, 876 N.E.2d 831, 836 (2007)).  The burden is, however, on the party asserting the discovery rule to demonstrate that his action is timely. Id. (citing Parr v. Rosenthal, 57 N.E.3d 947, 955 (Mass. 2016)).  Accordingly, the asserting party must proffer sufficient facts demonstrating that he neither knew nor reasonably should have known about the alleged injury to survive summary judgment. Id. (citing Wolsfelt v. Gloucester Times, 155 N.E.3d 737, 745 (Mass. App. Ct. 2020)).  This standard applies equally to a variety of torts, including the tort of defamation. Id. at *3; see Hendrickson v. Sears, 310 N.E.2d 131, 132 (Mass. 1974) ("[L]imitation statutes should apply equally to similar facts regardless of the form of proceeding . . . .")).

Whether a social media post is known or should have been known presents a complicated issue.  As the SJC recognized in addressing the certified question, social media can vary by platform and by post. See Davalos, 2024 WL 4031129, at *1.  As such, the mere fact that something was posted to social media does not establish as a matter of law that the plaintiff should have known of it.  Instead, as the SJC articulated, the outcome depends heavily on the facts of the post at issue. Id. at *7-*8; see Tu Nguyen v. Duy Tu Hoang, 318 F. Supp. 3d 983, 993-94,

1012-13 (S.D. Tex. 2018) (declining to apply discovery rule to issue involving social media post because post at issue had been shared widely on Facebook); Jones v. Reekes, No. F082499, 2022 WL 594117, at *1, *8, *10-*11 (Cal. Ct. App. Feb. 28, 2022) (declining to apply discovery rule in defamation case because, even though social media posts were never widely shared, posts were easily accessible to plaintiff and plaintiff's long history of similar disagreements with the defendant gave him "cause to seek access"); see also Tseng v. PeopleConnect, Inc., 665 F. Supp. 3d 1136, 1146 (N.D. Cal. 2023) (declining to apply discovery rule in case involving misappropriation of plaintiff's image because "additional step" needed to find image beyond a simple search failed to make defendant's use "inherently secretive"); Glassdoor, Inc. v. Andra Grp., LP, 575 S.W.3d 523, 530 (Tex. 2019) (similar).

Here, plaintiffs claim that they were either unaware of the Facebook posts at issue until their attorney brought the posts to their attention in 2021 or could not recall how they became aware of the posts.  Plaintiffs bear the burden of 1) showing that their lack of knowledge was objectively reasonable and 2) explaining why more reasonable diligence would not have led to discovery of the posts. See Parr, 57 N.E.3d at 955.

In assessing whether their lack of knowledge was reasonable, the Court recognizes that Facebook had over one

billion users in 2013.  Plaintiffs have not alleged how many
people actually viewed Club Alex's Facebook page or the specific
posts at issue, or how many "likes" or "shares" the relevant
posts received.  Without such information, it is impossible to
determine whether those posts were insufficiently circulated to
warrant the application of the discovery rule.  Cf. Tu Nguyen,
318 F. Supp. 3d at 993-94 (relying on number of views Facebook
page had when applying discovery rule).  Even if the facts were
to indicate that the posts were widely circulated, that alone
would not be enough to prevent the application of the discovery
rule.  See Jones, 2022 WL 594117, at *10-*11 (finding discovery
rule inapplicable even though posts were not widely circulated).

A further but related consideration is the absence of any
allegations that the posts were ever concealed, kept secret, or
restricted.  Cf. Tu Nguyen, 318 F. Supp. 3d at 993-94 (relying on
ease of accessing posts to decline applying discovery rule).  In
fact, the purpose of the posts as advertisements for Club Alex
indicates that they were meant to be circulated, not hidden, and
plaintiffs offer nothing to rebut that inference.  Even if the
posts were in some way restricted and not readily accessible to
plaintiffs, moreover, that would not be sufficient in and of
itself to excuse plaintiffs' failure to discover them.  See
Jones, 2022 WL 594117, at *10-*11 (noting plaintiff could have
accessed posts, even though he was blocked from viewing them, in

declining to apply discovery rule); Tseng, 665 F. Supp. 3d at
1146 (similar); Glassdoor, Inc., 575 S.W.3d at 530 (similar).

Perhaps most salient, the facts leave no doubt that
plaintiffs, all of whom license their images as part of their
profession, had good reason to know that people were
misappropriating their likenesses on social media. Indeed,
plaintiffs have all been involved with numerous lawsuits related
to other instances of misappropriation in the years following
Club Alex's posts.  Plaintiffs were able to discover and act
upon misappropriations in other cases and offer no reason why
these posts were any different or less discoverable than others.
Just as the frequent past disputes between the plaintiff and
defendant in Jones indicated a need for vigilance, the frequency
with which plaintiffs have had their likenesses misappropriated
renders reliance on the discovery rule suspect. Id.[2]

To be sure, there are potential factors that may appear to
warrant an application of the discovery rule in favor of
plaintiffs.  The universe of social media is undoubtedly vast,
with Facebook as of 2013 receiving more than 350 million image
uploads each day.  Additionally, plaintiffs have had their
images widely distributed as part of their profession and, as
such, may have difficulty distinguishing between authorized and

---

[2] As defendant notes, Facebook maintained facial recognition technology that,
at all times relevant to this case, could have aided in such searches.

unauthorized uses.  The fact that the allegedly misappropriated
posts occurred amid a vast sea of Facebook posts does not,
however, render plaintiffs' lack of knowledge objectively
reasonable.  Cf. id.; Jones, 2022 WL 594117, at *10-*11; Henry
v. Raycom Media, Inc., 210 F. App'x 632, 633 (9th Cir. 2006)
(affirming that discovery rule should not toll the statute of
limitations in a defamation case where "internet postings were
accessible by any member of the public for free").

    Nor is the fact that the posts may have required more than
a perfunctory search to locate on Facebook enough to invoke the
discovery rule's protections.  Cf. Tseng, 665 F. Supp. 3d at 1146
(finding discovery rule inapplicable even where image required
some additional steps); Glassdoor, Inc. v. Andra Grp., LP, 575
S.W.3d at 530 (similar).  Instead, as the SJC recognized, the
record here is replete with gaps.  Without additional evidence
of how widely shared or viewed the images in question were, see
Tu Nguyen, 318 F. Supp. 3d at 993-94; Jones, 2022 WL 594117, at
*10-*11, or precisely how difficult the images were to find when
they were posted, there are insufficient grounds to warrant the
application of the discovery rule here.

    Accordingly, plaintiffs have failed to create a genuine
dispute of fact as to whether the applicable statute of
limitations was sufficiently tolled, and therefore Counts 3
through 12 are time-barred by the statute of limitations under

M. G. L. c. 260, § 2A. See Doe, 786 N.E.2d at 1213 (placing burden of discovery rule on party seeking its protection).

### 2. Lanham Act Claims

In addition to the state-law claims that were alleged in Counts 3 through 12, plaintiff also brings federal law claims under the Lanham Act in Counts 1 and 2. Defendant asserts a statute of limitations defense to plaintiffs' Lanham Act claims as well. Unlike plaintiffs' state-law claims, however, the Lanham Act has no statute of limitations. In its absence, defendants put forth two alternatives: 1) that this Court should apply the most analogous state statute of limitations or 2) that the doctrine of laches bars plaintiffs' claims.

Generally, when a federal statute lacks an express statute of limitations, it is presumed Congress intended courts to "apply the most closely analogous statute of limitations under state law." DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 158 (1983). There is, however, a "closely circumscribed exception" to the applicability of a state statute if another source of federal law supplies a better analogy. Id.

The First Circuit has not addressed whether this exception applies to claims brought under the Lanham Act and decisions of other sessions of this Court are in conflict. Some judges have held that the most analogous statute of limitations under state law applies. See, e.g., Kusek v. Family Circle, 894 F. Supp.

522, 530 (D. Mass. 1995) ("The general rule requiring the
application of an analogous state statute of limitations applies
in the Lanham Act context."). Others have applied the doctrine
of laches, an "equitable doctrine" that bars a claim based on
"negligent or willful failure" to assert it timely. Oriental
Fin. Grp., Inc. v. Cooperative de Ahorro y Credito Oriental, 698
F.3d 9, 20 (1st Cir. 2012); see Micromuse, Inc. v. Micromuse,
Plc., 304 F. Supp. 2d 202, 218 (D. Mass. 2004) ("[T]he Lanham
Act . . . is not subject to the usual borrowing rule that adopts
an analogous state statute of limitations as a federal
substitute . . . . [and instead] courts have consistently used
[equitable] principles of laches." (quotation omitted)).

    In the absence of guidance from the First Circuit, this
Court turns to analogous decisions in other circuits to
determine whether the statute of limitations or laches should
apply. See Gill v. JetBlue Airways Corp., 836 F. Supp. 2d 33, 39
(D. Mass. 2011). Other circuits appear, however, to agree that
laches applies to Lanham Act claims. See, e.g., Excelled
Sheepskin & Leather Coat Corp. v. Or. Brewing Co., 897 F.3d 413,
419 (2d Cir. 2018); Kars 4 Kids Inc. v. Am. Can!, 8 F.4th 209,
220 (3d Cir. 2021); Belmora LLC v. Bayer Consumer Care AG, 987
F.3d 284, 293-294 (4th Cir. 2021); Elvis Presley Enters., Inc.
v. Capece, 141 F.3d 188, 205 (5th Cir. 1998); DayCab Co., Inc.
v. Prairie Tech., LLC, 67 F.4th 837, 854 (6th Cir. 2023);

Chattanoga Mfg., Inc. v. Nike, Inc., 301 F.3d 789, 793 (7th Cir. 2002); A.I.G. Agency, Inc. v. Am. Int'l Grp., Inc., 33 F.4th 1031, 1034 (8th Cir. 2022); Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 837 (9th Cir. 2002); Yeager v. Frot Knox Sec. Prod., 602 F. App'x 423, 431 (10th Cir. 2015); Kason Indus., Inc. v. Component Hardware Grp., Inc., 120 F.3d 1199, 1203 (11th Cir. 1997); accord 4 McCarthy on Trademarks and Unfair Competition § 31:1 (5th ed.).[3]  Therefore, this Court chooses to follow the majority approach and finds laches applicable to Lanham Act claims.

Nevertheless, plaintiffs argue that laches is inapplicable to this case because defendant's infringement was willful and laches should only be available to parties with clean hands. They concede that no First Circuit cases support that contention and instead rely on decisions from the Second Circuit finding laches to be categorically inapplicable where an infringer acted with bad faith. See, e.g., My-T Fine Corp. v. Samuels, 69 F.2d 76 (2d Cir. 1934); Hermes Intern. v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104 (2d Cir. 2000).  The Second Circuit is, however, unique in this regard.  Other circuits have found the issue of deliberate infringement to be merely one factor in

---

[3] Although the Supreme Court has not expressly decided this issue, it too has intimated that laches is applicable to the Lanham Act. See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 667 n.15 (2014) ("[The] Lanham Act . . . contains no statute of limitations, and expressly provides for defensive use of equitable principles, including laches." (quotation omitted)).

- 14 -

considering when to apply laches. See e.g., Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc., 908 F.3d 313, 343-345 (8th Cir. 2018); Pinkette Clothing, Inc. v. Cosm. Warriors Ltd., 894 F.3d 1015, 1029 (9th Cir. 2018); accord 4 McCarthy on Trademarks, supra, at § 31:9 & n.10.  In contrast to the Second Circuit, those decisions better align with the equitable nature of laches than the Second Circuit's brightline test. Accord Personalized Media Commc'ns, LLC v. Apple Inc., 57 F.4th 1346, 1354 (Fed. Cir.), cert. denied sub nom. Personalized Media Commc'n, LLC v. Apple Inc., 144 S. Ct. 290, 217 L. Ed. 2d 132 (2023) ("Laches is an equitable and flexible doctrine that requires considering the totality of the circumstances."). Thus, even assuming arguendo that defendant's infringement in his case is willful, the Court declines to follow the Second Circuit's minority view as an absolute bar to laches.

Even when other circuits find laches applicable to Lanham Act claims, cases recognize that state statutes of limitations remain relevant to invoke a presumption either in favor of or against laches. Yeager v. Fort Knox Sec. Prods., 602 Fed. Appx. 423, 431 (10th Cir. 2015); Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996).  If the state statute of limitations has already expired, courts presume laches applies to bar the claim but if the statutory period has not expired, laches is presumed inapplicable. Id. (citing Herb Reed Enters.,

LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1246-47 (9th Cir. 2013), cert. denied, 135 S. Ct. 57 (2014)); see Jaso v. The Coca Cola Co., 435 F. App'x 346, 357 n.10 (5th Cir. 2011) ("[C]ircuits that have addressed laches in the context of a Lanham Act claim have determined that a delay beyond the limitations period creates the presumption that laches applies."); Jarrow Formulas, Inc., 304 F.3d at 837 (same).

Here, the parties do not dispute, and this Court finds, that the most analogous statute of limitations is drawn from the Massachusetts Consumer Protection Act, M.G.L. c. § 93A.  Actions brought under that provision must be filed within four years of accrual.  M.G.L. c. 260, § 5A.  As discussed above, the discovery rule does not apply to toll the limitations period in this case.  Because plaintiffs' complaint was filed beyond the applicable four-year limitation period, a presumption arises that the doctrine of laches applies to bar plaintiffs' Lanham Act claims.  See Yeager, 602 Fed. Appx. at 43.  That presumption places a burden on plaintiffs, as the party seeking to bring the Lanham Act claim, to rebut laches's applicability.  See Jaso, 435 F. App'x at 357 n.10; see also Jarrow Formulas, Inc., 304 F.3d at 837 (collecting cases applying presumption of laches).

The two elements necessary for laches to apply are well settled: 1) a lack of diligence by the non-moving party in asserting their claims and 2) prejudice to the party asserting

the defense. Museum of Fine Arts, Bos. v. Seger-Thomschitz, 623
F.3d 1, 10 n.9 (1st Cir. 2010); K-Mart Corp. v. Oriental Plaza,
Inc., 875 F.2d 907, 911 (1st Cir. 1989).  The non-moving party
is diligent if his actions in attempting to discover the harm
are found to be "reasonable." Vineberg v. Bissonnette, 548 F.3d
50, 57 (1st Cir. 2008).  Circumstances that result in prejudice
for the moving party include instances such as a "loss of
evidence" or "the unavailability of important witnesses" over
time. Id.  Because applicability of laches is highly "fact-
sensitive," the determination of diligence and prejudice is well
within the sound discretion of the district court. Id.; see
Puerto Rican-Am. Ins. Co. v. Benjamin Shipping Co., Ltd., 829
F.2d 281, 283 (1st Cir. 1987).

      Here, plaintiffs have failed to provide facts sufficient to
create a material dispute as to whether their actions were
reasonably diligent.  They claim that they discovered the
offense when some of them learned it from their attorney in 2021
and others could not recall when they first learned about the
posts.  None demonstrate reasonable diligence. Cf. Dominguez v.
United States, 799 F.3d 151, 154 (1st Cir. 2015) (indicating
plaintiffs cannot rely on fact they waited until receiving
confirmation from attorney to make claim timely); Hot Wax, Inc.
v. Turtle Wax, Inc., 191 F.3d 813, 823 (7th Cir. 1999) (finding
delay unreasonable where, among other things, plaintiff failed

to identify specific time it became aware of defendant's alleged actions).  The only substantive piece of evidence plaintiff has proffered to the contrary is an affidavit of a legal secretary who claims that successful image searches can take "days or weeks to complete," but that does nothing to explain why an over eight-year delay is reasonable here.

The facts are also clear that plaintiffs have brought a host of other lawsuits based on misappropriation of their likenesses.  Although not related to the specific images in question here, the extent to which plaintiffs' likenesses have allegedly been misused is sufficient to put them on notice.  See Saul Zaentz Co. v. Wozniak Travel, Inc., 627 F. Supp. 2d 1096, 1111-1112 (N.D. Cal. 2008) (finding trademark holder is "not required to constantly monitor every nook and cranny of the entire nation" but reasonable plaintiff would investigate further "when confronted with successive . . . reports [of] potentially infringing uses" (citation omitted)).  Plaintiffs have shown their capability of keeping track of their images, many of which have allegedly been misappropriated on social media sites for similarly situated "gentlemen's clubs."  The absence of any evidence of an investigation to discover such images by other means shows a lack of due diligence.

As to prejudice, defendant has proffered evidence supporting a finding of laches.  Most notably, defendant points to the fact that the original owner of Club Alex died in 2018, after the images were allegedly misused but before plaintiffs filed suit.  Had plaintiffs brought their claim sooner, that individual would have had the opportunity to present potentially salient details about his intent and the likelihood of confusion the images may have caused.  See N.K. Collins, LLC v. William Grant & Sons, Inc., 472 F. Supp. 3d 806 (D. Haw. 2020) (finding prejudice for purposes of laches where two witnesses died and there was "depreciation in all relevant witness' memories").

Defendant also contends that the delay frustrated its ability to disprove the claim that the images created consumer confusion, as required for a Lanham Act claim, given the time that has passed since the images were initially posted.  Plaintiffs rely on a survey conducted in 2023 to discern whether survey participants would consider plaintiffs associated with the defendant.  Defendant argues that, had plaintiffs' claim been brought sooner, it would have been possible to assess this issue based on potential clientele at the time the posts were made rather than a decade later.  That deterioration in the face of delay is precisely the kind of prejudice the First Circuit has found to be meaningful. Vineberg, 548 F.3d at 57; accord Winchester v. Pension Comm. of Michael Reese Health Plan, Inc.

Pension Plan, 942 F.2d 1190, 1194 (7th Cir. 1991) (finding
prejudice for purposes of applying laches where delay in
bringing claim caused difficulty of reconstructing relevant
records).  More to the point, there is no "particular category
of prejudice that must be shown by the party asserting a laches
defense."  Sch. Union No. 37 v. Ms. C., 518 F.3d 31, 37 (1st
Cir. 2008).  It matters only that the prejudice is "material."
Trustees of Bos. Univ. v. Everlight Elecs. Co., 187 F. Supp. 3d
306, 318 (D. Mass. 2016).  Plaintiff, in turn, makes no mention
of this delay in the survey when addressing the prejudice issue,
nor disputes that the length of delay therein is material.

Given the totality of these circumstances, the Court finds
unpersuasive the allegations of "unclean hands," relied upon by
plaintiff to defeat the defense of laches. See Pinkette
Clothing, Inc., 894 F.3d at 1029; Sturgis Motorcycle Rally,
Inc., 908 F.3d at 343-345.  Finally, that plaintiffs brought
their claim more than eight years after the final Facebook post,
a lengthy delay, further warrants a finding of prejudice. See
Hot Wax, Inc., 191 F.3d at 824 ("[I]f only a short period of
time has elapsed since the accrual of the claim, the magnitude
of prejudice required before the suit should be barred is great,
whereas if the delay is lengthy, prejudice is more likely to
have occurred and less proof of prejudice will be required."

(quoting <u>Zelazny</u> v. <u>Lyng</u>, 853 F.2d 540,573 (7th Cir. 1988) (categorizing plaintiff's eight-year delay as "lengthy"))).

The facts in this case are sufficient to uphold the presumption in favor of laches and to warrant entry of summary judgment in favor of defendants on Counts 1 and 2.  <u>See</u> <u>Am. Int'l Grp., Inc.</u> v. <u>Am. Int'l Bank</u>, 926 F.2d 829, 831 (9th Cir. 1991) ("[A] district court may properly grant summary judgment on the basis of laches."); <u>Phico Ins. Co.</u> v. <u>Aetna Cas. & Sur. Co. of Am.</u>, 93 F. Supp. 2d 982, 992 (S.D. Ind. 2000) ("Summary judgment may be appropriately granted where there are no genuine issues of material fact as to the laches defense.").  Because summary judgment is warranted on the basis that all 12 counts brought in plaintiffs' complaint are time-barred, the Court need go no further in considering the merits of plaintiffs' claims. <u>See</u> <u>Holloman</u> v. <u>Clarke</u>, 244 F. Supp. 3d 223, 228 (D. Mass. 2017) (recognizing timeliness of claim as "threshold matter").

**ORDER**

For the foregoing reasons, defendant's motion for summary judgment (Docket No. 71) is **ALLOWED** and plaintiffs' motion for summary judgment (Docket No. 75) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  September 30, 2024